CASE 87—PRIORITY OF LIENS—FEB. 16.

# Grainger & Co., Etc. v. Old Kentucky Paper Co., Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. LIENS—PRIORITIES—MECHANICS' AND MORTGAGE LIEN.—Under the act of March 2, 1869, providing for mechanics' liens for the city of Louisville, the lien of the mechanic has precedence of a mortgage lien upon the building improved; and where the property is sold by consent and does not sell for enough to pay both liens, it is proper. to ascertain the value of the betterment created by the improvement made by the mechanics and after paying for the preferred charges, to satisfy the mechanics' lien from that, leaving the residue for the mortgagee.

2. RECEIVER'S AND COMMISSIONER'S FEES PREFERRED CHARGES.—Reasonable fees and charges of a receiver and of the commissioner in an action to enforce liens and determine priorities constitute a preferred claim to be satisfied (1) from the general assets, and if they are insufficient, (2) from the *corpus* of the property in lien.

3. SAME—AMOUNT REDUCED.—In this case, the receiver's charges and fees are held too large and reduced, those for personal services from $1,500 to $750, and his attorneys' fees from $1,000 to $500, and the commissioner's fees are reduced from $500 to. $250.

L.AF. JOSEPH, FOR APPELLANTS, GRAINGER & CO.

1. Mechanics' Liens. Boisot on Mechanics' Liens, secs. 7, 34, 36; Stephens v. Ward, 11 B. M., 337; Ky. Stat., sec. 496.
2. Costs. Ky. Natl. Bank v. Louisville Bagging Co., 17 Ky. Law Rep., 983; Loth, &c., v. Carty, 85 Ky., 597.

WALLACE & McDONALD, FOR APPELLANT, PAT DONAHUE.

1. The appellant, Pat Donahue, is entitled to a mechanics' lien upon the property constituting the plant of the paper company.
2. This lien is superior to all others upon said property, except

such other mechanics' liens as may be established, and especially is it superior to the mortgage of the Columbia Finance & Trust Company.

Citations: Act of Feb. 17, 1858, Lou. City Code, p. 446; Act of Mar. 2, 1869, Lou. City Code, p. 453, Gen. Stat., Art. III., Ch. 70; Nunes v. Wellisch, 12 Bush, 363; Gen. Stat., Ch. 24, sec. 14; 15 Am. & Eng. Ency. of Law, 61; Trustees of Caldwell Inst., v. Young, 2 Duv., 582; Naz. Inst. v. Lowe, 1 B. M., 257; Gen. Stat., Ch. 24; sec. 10; Mercantile Trust Co v. South Park Res. Co., 94 Ky., 271; Cumber v. Chandler, 5 Ky. Law Rep., 185; Colvin v. Newell, 8 Ky. Law Rep., 959; Ricketts v. Hooper, 4 Ky. Law Rep., 444; 19 Am. & Eng. Ency. of Law, 575; Gen. Stat., Chap. 63, Art. I., Sec. 24; Chapman v. Stockwell, 18 B. M., 653; Abell v. Abell, 12 Ky. Law Rep., 830; Maupin v. McCormick, 2 Bush, 208; McClure v. Harris, 12 B. M., 261; 3 Pa. St., 79; 38 Atl., 1083; 23 Pa. St., 186; 62 Am. Dec., 328; Colcord v. Seamonds, 6 B. M., 265; 72 Ala., 632; 100 Ind., 558; 130 Mass., 289; Gere v. Cushing, 5 Bush, 304; Fouschee v. Grigsby, 12 Bush, 75; Building Assn., v. Korb, 79 Ky., 190; 6 Am. & Eng. Ency. of Law, 639; Prescott v. Trueman, 4 Mass., 627; 10 Am. & Eng. Ency. of Law, 366; 130 Mass., 460; 25 Ark., 452; 48 Ind., 45; Talliaferro v. Gay, 78 Ky., 496; Woolley v. Holt., 14 Bush, 790; Ford v. Gregory, 10 B. M., 175; Perry on Trusts, p. 218; 44 Conn., 455; 65 Barb., (N. Y.) 227; 16 Am. & Eng. Ency. of Law, 828; 46 Barb., (N. Y.) 211; 22 N. Y., 564; 52 N. Y., 138; 3 Atl. Rep., 304; 10 Vesey 246; 2 Utah, 39, 52; Houston v. Long, 15 Ky. L. R., 721.

W. S. PRYOR ALSO FOR APPELLANTS.

1. The mortgage under which the appellee Columbia Finance & Trust Company was given priority was executed and recorded while the work of repairing that plant was going on, and was therefore taken with notice of the mechanics' lien. Grainger's claim was under one agreement, and the items furnished at different times did not constitute separate and independent liens. Jones v. Sewan, 25 Iowa, 181; Milliner v. Norrell, 13 Minne., 45; Stockwell v. Carpenter, 27 Iowa, 119; Nunes v. Wellisch, 12 Bush, 363; Fouschee v. Grigsby, 12 Bush, 75.

HUMPHREY & DAVIE FOR THE APPELLEE, THE COLUMBIA FINANCE & TRUST Co.

1. The Fidelity Trust & Safety Vault Company, receiver, is not entitled to reverse the judgment which refused to allow it priority for its attorney's fees, costs, commissions and for the cost of the commissioner's report herein; such charges not being priorities as against the first mortgage. Kentucky National Bank v. Louisville Bagging Mfg. Co., 98 Ky., 371.

2. The only mechanics' lien statute applicable to this case is the act of 1869, and so much of the act of 1858 as is to be "read as a part of the act of 1869," under the decision in Nunes v. Wellisch, 12 Bush, 363.

3. Under these mechanics' lien laws of 1858 and 1869, it is expressly provided that the mechanics' lien thereby given "shall not be valid or effectual" against a mortgagee whose mortgage is recorded prior to the time when the mechanic shall record his own lien in the county clerk's office. Fouschee v. Grigsby, 12 Bush, 75; Nunes v. Wellisch, 12 Bush, 363; Building Assn. v. Korb., 79 Ky., 190; Gere v. Cushing, 5 Bush, 304.

4. The fact that the mechanics may have been at work on the premises before the mortgage was recorded does not affect the mortgagee's right at all. Fouschee v. Grigsby, 14 Bush, 363.

5. The mechanics have no right to remove the machinery from this mill, because mill machinery becomes part of the realty, and to remove it would injure the mill and prevent its operation. Note to Elwes v. Mawe, 2 Smith Leading Cases, 202, 204; Reyman v. Henderson Bank, 98 Ky., 748; Triplett v. Mays, 13 Ky. L. R., 874; Bank Lou., v. Baumeister, 87 Ky., 15; Jones on Mortgages, (4th ed.) sec. 436; 84 Pa. St., 333; 44 Iowa, 57; 51 Wis., 123.

6. Another reason why no right of removal exists, is that the statute says that the lien "shall not be valid or effectual," for any purpose, against the mortgage; and it is no more valid to give the right of removal as against the mortgagee, than it is to give a right to a prior lien over the mortgagee. Gere v. Cushing, 5 Bush, 304; Nunes v. Wellisch, 12 Bush, 363; Korb v. Building Assn., 79 Ky., 190.

7. The holder of a mortgage made for the purchase money of land, is a *bona fide* purchaser, for a valuable consideration. Jones on Mortgages, (4th ed.) sec. 458; Lane v. Logue, 12 Lea. (Tenn.)

681; Christopher v. Christopher, 64 Md., 583; Gere v. Cushing, 5 Bush, 308.

8. The rule laid down in the federal courts as to receivers of railroad companies, by which laborers and supply men are allowed a preference out of the moneys collected by the receiver, does not apply to a case of a private corporation, and is limited to cases of public corporations, where public policy requires their continued operation. Wood v. Safety Co., 128 U. S., 421; Farmers Loan Co. v. Great Coal Co., 50 Fed. Rep., 481; Kneeland v. Coal Co., 136 U. S., 89; Rahr v. Atrell, 60 Am. Rep., 456; High on Receivers, (3d ed.), sec. 312 B; Snively v. Phoenix Co., 69 Fed. Rep., 204; Seventh Bk. v. Shenandoah Co., 42 Fed. Rep., 372.

SAME COUNSEL FOR THE APPELLEE IN A PETITION FOR A REHEARING.

Additional citations: Triplett v. Mays, 13 Ky. Law Rep., 874; Smith's Leading Cases, vol. 2, p. 202; Korb v. Bldg. Assn., 79 Ky., 190; Tome v. Cain, 64 Md., 166.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

Some time prior to 1893 there was in existence in Louisville, Ky., a corporation called the "Bremaker-Moore Paper Company," which corporation was the owner of the lot in controversy, together with certain machinery thereon. The title to this property became vested in the Columbia Finance & Trust Company. After the title was vested, a corporation was formed called the "Old Kentucky Paper Company," which latter company purchased the property aforesaid at the recited consideration of $75,000, and a deed was executed to the Old Kentucky Paper Company conveying said property, which deed was dated 20th of January, 1893, and seems to have been acknowledged the 24th of February, and recorded on the 8th of March, 1893. The Old Kentucky Paper Company also executed a mortgage or deed of trust to the Columbia Finance & Trust Company to secure the payment of $60,000, which is alleged to be the unpaid

purchase price for the said property. This mortgage bore even date with the deed, and appears to have been acknowledged in part on the 1st of March, 1893, and finally and fully acknowledged and recorded on the 9th of March, 1893. It is claimed that the Old Kentucky Paper Company in fact only paid $15,000 cash, and executed a note for $10,000, and executed certain bonds for the residue of the purchase money. It also appears that the machinery theretofore used by the former paper company was out of repair, and that it required a large amount of machinery to be furnished and work to be done to enable the Old Kentucky Paper Company to operate the plant; and it is claimed that the appellants, Grainger & Co., W. E. Caldwell Co., John Mitchell, and Pat Donahue, furnished the materials and performed the services and work as mechanics and material men, as set up and filed in this suit, and that the same was necessary to enable the plant to be operated as a paper mill. Some of the appellants had been contracted with, and commenced the rendition of services and furnished materials, before the recording of either the deed or mortgage; and it is claimed that the materials and labor furnished continued up to the 20th of October, 1893, at which time appellants, Grainger & Co. instituted their action for the enforcement of their alleged lien upon the property. In February, 1894, Grainger & Co., by an amended petition, made the appellee Columbia Finance & Trust Company and other alleged lienholders parties to its suit, and caused the Old Kentucky Paper Company to be placed in the hands of the Fidelity Trust & Safety Vault Company, as receiver, which receiver continued to have the plant operated for some time, after which it was sold, as is stated, for the sum of $51,000. The appellants, as well as appel-

lee Columbia Finance & Trust Company, by appropriate pleadings, asserted their claims. The cause was referred to the commissioner to audit and report as to claims, etc., and in his report he adjudged the claims of the several mechanics and material men to be a superior lien upon the property, and also reported that the receiver should be allowed $1,500 for its services, and attorney's fee of 1,000, and $500 to the commissioner for his services; the three latter to be preferred claims. The appellee Columbia Finance & Trust Company filed exceptions to the report, and the court, upon final hearing, adjudged that the claim of the appellee Columbia Finance & Trust Company was superior to the claims or liens of the aforesaid mechanics and material men, and also adjudged that the receiver should not be paid out of the funds arising from the sale of the property, and in like manner disallowed the claims for attorney's fee and commissioner's fee, and from this judgment appellants prosecute this appeal.

It seems that the claims of the mechanics and material men are just and valid claims, and that proper steps have been taken by each of them to secure their liens, if any they had; hence the only question presented for decision is as to the priorities between the appellants and appellee Columbia Finance & Trust Company. It does not appear that the Old Kentucky Paper Company, as a corporation, took any part in the litigation between the other parties. It is contended for the appellee trust company that its debt is superior to any other; and it further contends that its claim is, in fact and in law, the unpaid purchase money due it from the Old Kentucky Paper Company; that the mortgage and deed constitute, in law and fact, but one transaction; and that it has a lien for the

whole amount of its unpaid debt, which lien attached to the materials placed by appellants upon the property, and became superior to the liens of appellants, if any they had, which lien is also controverted by appellee. The attorneys have filed exhaustive briefs, accompanied with numerous authorities from courts of last resort, in support of their several contentions. It, however, seems to us that this question must be governed by the local statute applicable to Louisville and Jefferson county at the time the contracts were made and services rendered by the appellants. On March 2 1869, a law was enacted by the General Assembly entitled "An act to provide a mechanic's lien law for the city of Louisville and county of Jefferson." The first section of that act reads as follows: "That all persons who shall perform labor, or furnish materials, fixtures or machinery for constructing, finishing, altering, adding to, or repairing any house, building, mill, manufactory, or other structure within the city of Louisville or county of Jefferson, by or under any employment or contract, express or implied, shall and may have a joint lien upon such house, building, mill, manufactory, or other structure, and upon the interest of the employer in the parcel of land on which such structure may be situated, and in the previous structure added to, altered, or repaired, to secure the payment of their several demands, which lien shall be prior and superior to all other liens or encumbrances on any such house, building, mill, manufactory, or other structure, and the fixtures and machinery so constructed, when the structure is wholly new; and upon any machinery or fixtures, alterations, additions, or repairs to a previous building, which are capable of being severed or removed from such previous

[44]

building without material injury hereto, and shall be prior and superior to all other liens or encumbrances upon the interest of the employer in the lot or parcel of land built upon, and upon any previous structure so altered, repaired, or added to, created after the commencement of constructing the house, building, mill, manufactory, or other structure, or adding to, altering or repairing a previous structure: provided, that no lien shall so attach for any sum amounting to less than ten dollars." The second section provides that persons having a lien may enforce the same by petition in equity in the Louisville Chancery Court, or in any court of similar jurisdiction which may hereafter be established or exist in said county and city, but such petition must be filed within one year after the completion of the work or furnishing of the materials. Section 6 of said act provides for the enforcement of the liens. It will be seen from the foregoing that mechanics are, by the express wording of the statute, given a superior lien upon the work and materials placed upon the land or property.

This court in the case of Louisville Building Association v. Korb, 79 Ky., 190, had under consideration the act above referred to, and construed the same. It appears from the opinion in the case *supra* that the Louisville Building Association conveyed to Susan A. Peyton, a married woman, a certain lot of ground in the city of Louisville for the sum of $2,450, evidenced by separate notes then executed. A lien was reserved in the deed to secure the payment of the purchase money. After the execution of the deed, Peyton and wife erected a house on the premises, and executed a mortgage to the appellee Korb to secure $170. Davis & Gage and others had liens for materials furnished in the construction of the

building, and filed a petition in equity, making the vendors of the property and Korb defendants, and sought to subject the property to the payment of their liens. All the liens were in some manner satisfied except the liens of Korb and Davis & Gage. The court, in discussing the question, said: "The rights of the parties to this appeal must be determined, to some extent, at least, by the construction given the mechanic's lien law applicable alone to the city of Louisville and county of Jefferson." The court then quotes the section heretofore quoted in this opinion, and also refers to the second and eighth sections of the act *supra*. The court then said: "The provisions of the statute cited leave no room to question the intention of the Legislature, as it is manifest that the purpose of the law, was to give to the mechanics, material men, etc., a lien on the building constructed by them superior to all other liens, and we see no reason, where the employer is the owner in fee of the property, for withholding from the chancellor the power to sell the entire property, and distribute the proceeds according to the rights of the parties, and such, in our opinion, is the spirit and meaning of the sixth section of the act. It is true that the chancellor may rent the property, or cause the building to be removed; but when such action would result in serious loss to the parties a sale, should be ordered. In this case, however, all the parties have consented to the sale; and the question arises as to the proper distribution of the proceeds when the sale of the realty, with the dwelling or structure upon it, fails to satisfy all the liens. It is conceded that the vendor is entitled to a superior lien on the land, and the mode of ascertaining his interests, when both the land and structure upon it has been sold, is to require the commissioner to ascertain the value

of the land at the time of the judicial sale, and that much of the purchase money must be applied to the payment of the vendor's lien. After this is done, the sum remaining is the fund out of which the mechanics and material men are to be paid and upon which they have a superior lien."

In the case at bar, it appears that the entire property in contest has been sold, and brought only $51,000, and, like the case just quoted from, the fund is not sufficient to pay all of the vendor's lien and that of the mechanics, etc. It results, therefore, that there must be a pro rata distribution of the proceeds of the sale, and to do this the court should take $51,000 as the basis of the value of the property, and ascertain how much of this sum comes from appellants' betterments, and decree this amount to appellants, less such court costs as may properly be allowed as preferred claims.

As to the appeal of the receiver, the Fidelity Trust & Safety Vault Company, it seems to us that it was proper for the court, under the circumstances, to place the property in the hands of a receiver, to be run for the time being as it was operated. There is nothing in this case to indicate that any of the parties were injured by placing the property in the hands of a receiver. It can hardly be doubted but what a going concern will sell for a much better price than if it had remained idle for months, during litigation, and the circumstances and testimony in this case conduce to show that it would not have been kept going by the Old Kentucky Paper Company; hence it follows that the receiver should be allowed compensation out of the general funds for his services, including a reasonable attorney's fee, and the same applies to the commissioner. But we are of opinion that the claims

asserted by the receiver, and allowed by the commissioner as compensation to the receiver, including attorney's fee, and commissioner's fee are too large. The receiver should be allowed only $750 for services, and only $500 attorney's fee should be allowed, and $250 to the commissioner.

For the reasons indicated, the judgment appealed from is reversed, and cause remanded, with directions to the court below to ascertain the amount of the enhanced value of the property by reason of appellants' improvements, on the basis that the whole was of value $51,000, and decree this amount to appellants, less their pro rata of the costs, to be paid out of the fund. The assets, if any, of appellee Old Kentucky Paper Company, other than the money derived from the sale of the property herein, should be applied to the payment of the preferred claims and costs of this suit, including the claims heretofore allowed as well as those directed to be allowed by this opinion. But, if such ordinary assets are not sufficient to pay said preferred claims, etc., the same must be paid out of the $51,000 for which the property sold, before distribution between the vendor Columbia Finance & Trust Company and the mechanics and material men. Cause remanded for further proceedings consistent herewith.