Loth & Haas v. Carty, &c.

CASE 73—PETITION EQUITY—MAY 14.

# Loth & Haas v. Carty, &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

85    591
91    598
85    591
98    380
85    591
137   352

1. A MORTGAGE OF PROPERTY TO BE ACQUIRED IN FUTURO is construc-
tively fraudulent as to the creditors of the mortgagor other than the
mortgagee, and while it has been said that such a mortgage is good
against creditors "until attacked for fraud," it is sufficient, in order to
constitute such an attack, to state that the property sought to be sub-
jected was obtained subsequent to the giving of the mortgage, and
is only embraced by it by a clause attempting to cover property ac-
quired *in futuro*.

2. WHERE THE TENANT HAS ASSIGNED HIS PROPERTY FOR THE PAYMENT
OF HIS CREDITORS, and the trustee has brought a suit to settle the·
estate, the landlord need not sue out a distress warrant or attachment
for his rent in order to enforce his lien ; and where the trustee brings
his suit within three months after the landlord's claim for rent be-
comes due,·it is immaterial whether or not the landlord asserts his lien
within the three months, the property being in the custody of the
court.

3. SAME.—While the statute provides that if ·the property be removed
openly, and without fraudulent intent, from the leased premises and·
not returned, the lien of the landlord shall be lost, unless asserted
within fifteen days from the time of removal, a removal by the ten-·
ant's assignee for the benefit of creditors does not have that effect.

4. SAME—MORTGAGE.—A mortgageor having made an assignment for the
benefit of creditors, the mortgagee can not complain that the court
ordered the expenses of settling the trust to be paid out of the fund·
arising from the sale of the mortgaged property, upon which there·
was a prior lien, as the expenses were necessary to the settlement of
the trust and the rights of the various creditors, including the mort-
gagee.

Z. GIBBONS FOR APPELLANTS.

1. Prior to the act of 1843, the tenant by mortgaging his property upon
the leased premises could defeat the landlord's lien upon the mort-
gaged property for all rent due or to become due. (Beckwith v.
Bent, Duval, &c., 10 B. M., 96; 2 Dana, 204; 3 J. J. M., 432; 4 Dana,
22.)

2. The landlord's rights under the statute are purely legal—not equitable,
and under the statute, as it now exists, the landlord does not acquire
a lien as against a mortgagee or any other person, unless he sues out

his attachment or distress warrant within ninety days after the particular installment of rent becomes due. (Rev. Stats., vol. 1, p. 94, sec. 15; Gen. Stats., p. 604, sec. 12; English v. Duncan, 14 Bush, 377; Gedge v. Shoenberger, 7 Ky. Law Rep., 31; Stone v. Bohm Bros. & Co., 79 Ky., 144.)

3. The deed of assignment for the benefit of creditors did not affect the rights of either the landlord or the mortgagee.

4. It was error, as against appellants, to take any part of the proceeds of the mortgaged property to pay the costs and expenses of the assignee.

5. The mortgage of appellants was good as to the goods added after the execution of the mortgage, except as to an attaching creditor. (Zaring v. Cox's Assee., 527.)

H. MARSHALL BUFORD for appellees.

1. The landlord is entitled, under the statute, to a lien, although he does not cause to be issued a distress warrant or attachment to enforce it. (Rev. Stats., chap. 66, art. 2, secs. 14 and 20; Gen. Stats., chap. 66, art. 2, secs. 13 and 16; Williamson v. Wood, 2 Met., 41.)

It is the policy of the law to prefer landlords. (McLean v. McLean, 10 Bush, 168.)

2. When the assets of the tenant came under the control of the circuit court by the filing of the petition of his assignee, the landlord had a complete and perfect lien; and the court, having taken control of the fund, it became its duty to preserve and enforce all liens, priorities and equities as they existed when the property and its proceeds came under judicial control.

JUDGE HOLT delivered the opinion of the court.

The lease of W. A. Varty of the store-house of the appellee M. E. Carty began May 1, 1882, and ended May 1, 1883, at one thousand dollars per annum rent, payable monthly. It was paid to June 1, 1882, so that of the unpaid rent the first installment became due on July 1, 1882. On July 7, 1882, the tenant mortgaged to the appellants, Loth & Haas, his entire stock of merchandise then upon the leased premises, and the mortgage by its terms included "all goods that may hereafter be added to said stock."

James Gallahue, as one of Varty's creditors, attached the goods on August 14, 1882; and subsequent thereto,

but upon the same day, the debtor made an assignment to one Parker of all his estate for the benefit of his creditors.

The trustee brought an action to settle the trust on September 19, 1882, to which the appellants and Mrs. Carty were defendants. The petition averred that they were claiming liens of some character against the assigned estate, and called upon them to assert them. The appellee Carty was summoned to answer on September 21, 1882, but for some unexplained reason she did not do so until June 23, 1883, when she asserted a preferred lien or landlord's claim for her rent from June 1, 1882, to May 1, 1883.

The attaching creditor Gallahue also claimed a lien superior to that of Loth & Haas as to so much of the stock of goods as had been purchased after the execution of their mortgage and before the assignment. This claim to priority was denied by them, they claiming that their mortgage, by virtue of its terms, attached to them as they were added to the stock. They also deny the right of Mrs. Carty to any lien for rent, first, because she never sued out any distress warrant or attachment for it; and second, because if this were not necessary to create or preserve the lien, yet she failed to assert it within three months from the time it became due.

As the question as to her claim apparently presents more trouble in the true solution of it than that between the appellants and the attaching creditor, we will first consider the latter.

The clause of the mortgage relating to any thing that might thereafter be added to the stock was valid be-

vol 85—38.

tween the parties ; but the mortgagee thereby acquired
no available right to such subsequently acquired prop-
erty as against the creditors of the mortgageor.   The
general rule is, that a mortgage of property to be ac-
quired *in futuro* is void, and cannot avail against the
claims of other creditors.   (Ross, &c., v. Wilson, Peter
& Co., 7 Bush, 29 ; Vinson v. Hallowell, &c., 10 Bush,
538.)

We do not regard the case of Zaring, &c., v. Cox's
Assignee, &c., 78 Ky. Rep., 527, as in conflict with this
rule.   It is true that the facts of that case are not fully
shown by the report of it ; and it does not appear in it,
as it does in this case, that any creditor had intervened
by legal proceedings prior to the deed of assignment.
Such an effort to mortgage what the debtor may subse-
quently acquire is constructively fraudulent; and when
the court, in the last named case, said : "Such a convey-
ance is evidently good between the parties, and the lien
attaches so soon as any stock is added, and being good
between the parties, it is good as to antecedent creditors,
at least until attacked for fraud," it no doubt merely
meant that it being merely constructively fraudulent,
was valid until another creditor asserted his claim and
denied the validity of the mortgage as to property ac-
quired after its execution.   In such a case the attacking
creditor need only state the fact that the property was
obtained subsequent to the giving of the mortgage, and
is only embraced by it by a clause attempting to cover
property acquired *in futuro*.   This of itself makes it
constructively fraudulent as to other creditors ; and
when averred, constitutes an attack upon it for fraud,
and the portion of the opinion cited no doubt meant

that such a clause in a mortgage was valid as to antecedent creditors if they remained silent.

We now return to the other question.

In Petry, &c., v. Randolph, &c., *ante*, 351, the question presented was whether a landlord whose rent had been due more than one hundred and twenty days, but less than six months, could under the statute distrain for it after the tenant had assigned his property for the benefit of his creditors. It was there held, that as between the landlord and tenant, the former could distrain for it within six months from the time it became due ; that as to *lien*-holders, he must do so within ninety days ; and as to all other persons having rights or equities against the property of the tenant, he must do so within one hundred and twenty days, and that in case of an assignment, the rights of other creditors having thereby intervened, he must do so within the last-named period ; and that the sections of the statute providing that before the lien-holder or an officer under an execution or attachment can remove the tenant's property from the leasehold premises, he must pay to the landlord a year's rent due or to become due, related to cases where the landlord had not lost his right as above indicated. The question now presented is, however, a different one.

Unless the law requires what is needless, clearly where the tenant has assigned his property for the payment of his creditors, and the trustee has brought a suit to settle the estate, the landlord need not sue out a distress warrant or attachment for his rent. This would involve needless trouble and cost.

It is, however, urged that in this instance the land-

lord did not assert the lien until the expiration of three months after the rent became due. This is true as to nearly all of it; but the assignment was made within three months of the time when the first unpaid install-ment became due; the suit by the trustee to settle the estate was brought within this time, and the petition averred that Mrs. Carty had a lien. By virtue of the assignment, the property was held in trust for the pay-ment of her debt as a lien claim. The trustee repre-sented her; and when the suit was brought the estate was *in custodia legis* for the satisfaction of her claim.

The law made it the duty of the trustee to pay the lien claims first, and then the general creditors; he held the property for this purpose as the represent-ative of the beneficiaries; and upon the bringing of the suit to settle the trust the matter was already in the charge of the court. Then why the necessity of the landlord proceeding by distraint; or how can it be said that her claim is barred by time when the property had already been placed in the hands of a party represent-ing her for its payment? It is true, that the landlord has a statutory right merely and a legal remedy only. Undoubtedly, the law requires vigilance upon his part in the assertion of his rent claim. This is to prevent him from enabling the tenant to obtain false credit.

No such reason exists, however, in a case like this, where the tenant has already parted with the title to it, and it is in trust for the payment of the landlord. The statute provides that if the property be removed openly and without fraudulent intent from the leased premises, and not returned, the lien of the landlord shall be lost unless asserted within fifteen days from

the time of removal.   Here it appears it was removed, and, in fact, sold as early as December 15, 1882.   It was, however, done by operation of law and by the assignee, who represented the appellants as well as all the other creditors of the tenant.

The assignee in this instance retained control of the rented premises until the expiration of the lease ; and we perceive no reason, either equitable or legal, for depriving Mrs. Carty of her right to be paid out of the proceeds now in the trustee's hands arising from the sale of the property which was upon the rented premises ; nor do we think it was error for the court to order the expenses of settling the trust to be paid out of this fund, because they were necessary to the settlement of the trust and the rights of the various creditors, including the appellants.

Judgment affirmed.